IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CRIMINAL NO.  10-cr-15 |
| Plaintiff, ) | |
| ) | DEFENDANT'S SENTENCING |
| vs. ) | MEMORANDUM |
| ) | |
| DAVID L. LARSEN, ) | |
| ) | |
| Defendant. ) | |

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     UNDER THE FACTORS SET FORTH IN 18 U.S.C. §3553(a), MR.  LARSEN
        SHOULD RECEIVE A SENTENCE OF LESS THAN THE ADVISORY GUIDELINE
        RANGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**I.      INTRODUCTION**

Dave Larsen expresses great remorse for his handling of his tax situation.  As he directly states, "I am deeply sorry for the mistakes and misunderstandings I have followed concerning income taxes." *See Dave Larsen letter*, dated March 16, 2011.  Unlike many cases involving similar conduct, Dave's errant thinking arose out of a financial crisis followed by personal loss and devastation, not out of a political philosophy or agenda.  *Id*., *see also Jacqueline Larsen letter*, dated March 2, 2011. Dave recognizes the very wrong direction he took in attempting to respond to his financial problems. *Id*.

Those closest to Dave consistently describe him as remorseful, sorry and motivated to

1

correct the situation. His wife Jacqueline, very effectively describes the deep embarrassment and agony arising out of this situation for both she and Dave. *Jacqueline Larsen letter*, dated March 2, 2011, p.7, ¶6. Succinctly she states, "We are so sorry. We ask for forgiveness and the opportunity to make everything right." *Id*. Similarly, Dave's close friends and church mentors, Don and Morene Welch, state:

> We are certain if Dave had to do it all over again he would make different choices than those he made years ago that started this whole process in motion. We feel that Dave is truly sorry and repentant for the decisions he made. He is making every effort he can in taking the necessary steps in restitution. He is deeply grateful for the guidance and support he is receiving.

Matthew Nonnenmann, Dave's son-in-law, describes Dave as, "truly remorseful for his actions" and further he opines Dave "will use this as an opportunity for personal growth." *Matthew Nonnemann letter,* dated March 4, 2011, ¶ 3. Matthew continues to describe Dave's more general character for humility and openness to suggestion from others. *Id*. His family uniformly reports the seriousness with which Dave takes his situation and his sincere and deep regret. *See letters from Jacqueline Larsen, Sarah Kos, Rebecca Lukac, Matthew Larsen and Matthew Nonnenmann*.

Even those connected to Dave through professional relationships have observed his sincere remorse. "He understands the impact this situation had on his character and his ensuing actions have proven to me that he is sincerely trying to make amends." *Mark Schneider, Mid-Prairie and Keota Superintendent letter,* dated March 14, 2011, ¶ 4. John Dane, a business associate describes Dave as "truly sorry." *John Dane letter*, dated January 26, 2011, ¶ 3.

The Larsen's financial situation has always been tenuous at best. Dave works as a real estate developer. *PSR* ¶ 53. He is self-employed and does not receive a regular pay check or

compensation. *See PSR* ¶ 53. His income depends on the success of his development projects. *Id*.

To more specifically describe his work, Dave acts as the liaison between land owners and potential businesses. He identifies a parcel of land with potential for development and contacts the land owner to discuss his vision for developing the land. If the land owner agrees, Dave works with the proposed business or development to encourage them to build on that land. His responsibilities include planning all the logistics such as zoning, land elevation, etc. His compensation is an agreed upon percentage of the completed deal. Thus, it is dependant on a successful development and results only after years of work. His success is also dependant on obtaining the trust of those participating in the transaction. Most projects proceed to completion only after he has made long term and consistent efforts.

The nature of his work, unfortunately, yields sporadic income. *See PSR* ¶ 53 (outlining income for years 2004-2009). Through the years, the Larsen family has lived on a fragile financial situation. *See Jacqueline Larsen letter*, dated March 2, 2011, p.2, ¶ 6. The great financial loss in the late 90's threw off that fragile balance and started the downward financial spiral. *See Jacqueline's letter*, p. 2-7. Although Dave is optimistic that he has finally created a business foundation that has the potential for more consistent income, his past has been riddled with financial strain.

The Larsens have had to borrow money to sustain themselves between completed developments. *See PSR* ¶s 56-58, 60 (outlining debt). He has borrowed from financial institutions, friends, family and investors. *Id*. In fact, he currently holds a great deal of debt. *Id*. When a project does eventually result in compensation, much of the money is used to pay back

debt, take care of living necessities that were put off during the lean times, and to manage living expenses until the next project is completed. To date, although the Larsens are more stable, they continue to struggle financially.

The financial analysis outlined in the presentence report demonstrates a stretched financial situation. Mr. Larsen has negative equity in his home and cars. *PSR* ¶ 56, 58. His home is assessed at a value of $265,700 but he owes approximately $292,916.69. *PSR* ¶ 56. His cars are 10 and 12 years old and valued at approximately $2,925 and $3,050. *PSR* ¶58. He has a car loan for $6,945.97. *Id.* The payment on his farmland is $19,600 per year. *PSR* ¶57. He receives less than this for rent of the land (approximately $17,000 - 18,000). *See PSR* ¶ 60.

Despite the financial struggles, Dave's business partners describe him as honest and trustworthy. *See James Davis letter*, dated March 25, 2011, and *John Dane letter*, dated January 26, 2011. In his reference letter, James Davis specifically comments on how difficult it would be to replace Dave with a business partner he could trust as much as he does Dave. *See James Davis letter.* Even in the face of the current legal situation, those that have worked with Dave have faith in his integrity. *See letters from John Dane, James Davis and Mark Schneider.*

II.   **UNDER THE FACTORS SET FORTH IN 18 U.S.C. §3553(a), MR. LARSEN SHOULD RECEIVE A SENTENCE OF LESS THAN THE ADVISORY GUIDELINE RANGE.**

Title 18 U.S.C. §3553(a) states in part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection. The court, in determining the particular sentence to be imposed, shall consider 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence imposed a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal conduct; c) to protect the public from further crimes of the defendant; and d) to provide the defendant with needed educational or vocational training, medical care, or

other correctional treatment in the most effective manner."

In making this determination, there is no presumption that the guidelines sentence should apply. *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007). The district court must "...make an individualized assessment based on the facts presented." *Gall v. United States*, 128 S.Ct. 586, 597 (2007).

Mr. Larsen is a 62 year old husband and father of 6 children who has no prior criminal history. To the contrary, with the exception of the mistakes he made surrounding his current offense, he has lived a law-abiding and honorable life. He is a devoted family man, he is active in his church and community, and he is respected and trusted by his business associates. *See reference letters*. He is consistently described by those who know him as honest, compassionate, humble, kind, hard working, genuine and selfless. *Id*. He has had a positive impact on his children but also more generally on those who know him. *Id*. Dave has lived his life in an exemplary manner. *Id*.

With respect to the nature and circumstances of the offense, Dave feels a great deal of shame. He knows he pursued the wrong path for dealing with his financial crisis. *See Dave Larsen letter*, dated March 16, 2011. He has expressed remorse consistently and genuinely to all those familiar with the situation. *See reference letters*.

Although Dave does not make excuses for his choices, these uncharacteristic choices and behavior occurred in the context of great financial pressure and later personal loss. Based on these circumstances, he lost touch with his own good judgement and perspective, isolating himself from the sound advice and support of those closest to him. The deeper he dug himself into the situation, the greater the fear and the further he was from a rational approach to his

situation. However, those who know Dave the best believe he would make much different choices if he could go back and start over. *See reference letters*. They further believe he has a sincere motivation to correct his mistakes. *Id*. In sum, he is not only sorry for his choices but has learned from them.

Dave has already begun the process of making restitution on his own initiative. He has paid taxes for the years 2007, 2008 and 2009, totaling $5,121.45. *See attached checks*. He has also invested in professional help to sort through years of unpaid taxes, to assist with steps to pay back his tax debts and to advise him how to more effectively manage future payment obligations. *See Paul Alexander's letter*, dated March 22, 2011. Mr. Alexander has filed an offer of compromise with the IRS on behalf of Mr. Larsen. Although no installment agreement has been reached, Mr. Larsen has begun making $200 payments. *See attached checks*.

With respect to the need for punishment, it is the defense position that a sentence of probation most appropriately addresses sentencing objectives. Family, friends and professional associates agree that Dave will not repeat his mistakes. *Id*. They consistently describe the heavy weight and regret Dave has carried concerning the situation. *Id*. They have watched Dave suffer consequences of his actions. *Id*. They have likewise observed a desire by Dave to correct this situation. *Id*. It is in society's interest to facilitate Dave's efforts at restitution. Further, probation allows for a longer period of court supervision. Pursuant to 18 U.S.C. § 3583(a), (b)(3), the maximum period of supervised release is one year. In contrast, title 18 U.S.C. § 3561(c)(2) allows for a period of up to 5 years probation. Thus, a probationary sentence provides greater oversight of the situation for a greater length of time. To Dave's credit, he welcomes the support and assistance provided to him through the court and the probation office.

### III. CONCLUSION

Defendant David L. Larsen, respectfully requests a probationary sentence based on the above stated analysis.

              FEDERAL DEFENDER'S OFFICE
              MidwestOne Bank Building
              101 W. 2nd Street, Suite 401
              Davenport, Iowa 52801-1815
              TELEPHONE: (563) 322-8931
              TELEFAX: (563) 383-0052
              EMAIL: : diane_helphrey@fd.org

              By: /s/
                **Diane Helphrey**
                Assistant Federal Defender
                ATTORNEY FOR DEFENDANT

cc: Andrew Kahl, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on April 21, 2011, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
    /s/